UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 21 CR 279 |
| v. | ) | |
| | ) | Judge Franklin U. Valderrama |
| PATRICK D. THOMPSON | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S BRIEF ADDRESSING**
***UNITED STATES V. BEAVERS***

The UNITED STATES OF AMERICA, by and through its attorney, JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, respectfully submits the following response to Defendant's Brief Addressing *United States v. Beavers*. Dkt. 75.

On October 13, 2021, this Court requested that defendant address two issues: (1) whether *United States v. Beavers*, 756 F.3d 1044 (7th Cir. 2014), is controlling and (2) how defendant "intended to link his state of mind at the time he learned of an error and his state of mind when he filed the original returns." Dkt. 72 at 2.

As the government has set out in previous filings, in this case, defendant submitted false tax returns for tax years 2013-2017; the tax offenses were completed in mid-October 2018 when the 2017 false tax return was filed. On December 3, 2018, federal agents interviewed defendant at his residence, including an agent who identified himself as a Special Agent with Internal Revenue Service – Criminal Investigation. The agents asked defendant questions about his personal loan at Washington Federal and served defendant with a subpoena that requested, among other things, records relating to defendant's tax returns and tax return preparation.

1

*See* Dkt. 24, Ex. A. In April 2019, defendant filed amended tax returns. Defendant now seeks to introduce evidence relating to a conversation defendant purportedly had with his accountant in "late November or early December 2018" regarding amending his earlier tax returns. Dkt. 75 at 6. Defendant also seeks to introduce the amended tax returns themselves.

It is the government's position that *Beavers* is controlling for the proposition that it is within the district court's discretion to require an initial showing from defendant that the remedial actions are relevant to his earlier state of mind. The government urges the Court to exercise that discretion to require that defendant explain how the proposed evidence regarding defendant's purported 2018 conversation with his accountant, and the subsequent filing of the amended tax returns, are relevant to his state of mind at the time of the offense conduct. That relevance should be explored outside the presence of the jury before such evidence is admitted. In addition, the proposed evidence should be explored outside the presence of the jury to ensure the evidence is admissible as non-hearsay, as the proposed evidence involves out-of-court statements made by defendant and his accountant.

**I.      *Beavers* is Controlling for the Proposition that Post-Offense Conduct Must Be Relevant to a Defendant's Earlier State of Mind to Be Admissible as Evidence of Intent**

In *United States v. Beavers*, the defendant sought to introduce amended tax returns filed after the offense was completed and after he was approached by federal law enforcement. 756 F.3d 1044, 1049-50 (7th Cir. 2014). The district court ruled the "evidence would be admissible if [defendant] could establish that each remedial action

was relevant to [defendant's] state of mind at the time he filed the original tax returns. . . . [I]n the absence of a foundation establishing this link, the amended tax returns (and evidence of other remedial actions) did not make it more like that [defendant] believed his original returns were accurate when he filed them." *Id*.

The Seventh Circuit affirmed the district court's approach, explaining that judges "making relevancy determinations in this type of situation should proceed on a case-by-case basis." *Id*. at 1050. In some situations, "subsequent remedial actions may not be probative of the defendant's prior state of mind because such actions are equally consistent with (1) promptly correcting a genuine mistake and (2) trying to cover up a purposeful lie in the hope of avoiding prosecution." *Id*. The court ultimately concluded that the district court acted within its discretion in "condition[ing] the evidence's admission on some kind of showing of its relevance to Beavers' state of mind at the time he filed his original returns several years earlier" and in finding that "Beavers did not make this showing," including because his defense—that the transfers from his campaign committees were loans, not income—was "at odds with his argument that the remedial evidence was relevant." *Id*. at 1050-51.

In his recent filing, defendant asserts that *Beavers* is not controlling, drawing distinctions between the facts in *Beavers* and the facts in the instant case. Dkt. 75 at 1-4. However, defendant does not dispute that the remedial action must be relevant to his state of mind at the time of the offense to be admissible, as set forth in *Beavers*. *See also United States v. Schmitt*, 770 F.3d 524, 532 (7th Cir. 2014) ("Of course, evidence must be relevant to be admissible.") *Beavers* follows several Seventh Circuit

3

cases that have held that post-offense remedial conduct can have minimal, if any, relevance to the question of intent. *See, e.g., United States v. Yoon*, 128 F.3d 515, 525 (7th Cir. 1997) (defendant's return of funds after the fraud was completed "is irrelevant to the issue of whether evidence is sufficient to show that [defendant] knowingly participated in a fraud during its existence"); *United States v. Powell*, 576 F.3d 482, 495 (7th Cir. 2009) (explaining that the probative value of the filing of an amended tax return was "minimal" as "[t]he critical time-frame for determining willfulness is when [defendant] signed the return," not afterwards). The case-by-case approach to relevance endorsed by *Beavers* follows the Seventh Circuit's observation in *United States v. Tishberg* that post-offense amended returns "may demonstrate a good faith effort [by defendant] to correct his previous mistakes" but at the same time those returns do not "negate the import of [defendant's] previous action." 854 F.2d 1070, 1073 (7th Cir. 1988).

In *Beavers*, the district court and the Seventh Circuit reviewed the specific facts related to the remedial actions to determine whether or not the actions were relevant to the defendant's earlier state of mind.[1] This Court should do the same regarding the accountant's proposed testimony, and the amended tax returns themselves.

---

[1] As part of the inquiry in *Beavers*, the court examined the circumstances surrounding the proposed evidence, including that the proposed remedial evidence was inconsistent with defendant's theory of defense. *Beavers*, 756 F.3d at 1050-1051. The defendant asserts that the proposed remedial evidence in this case is consistent with his theory of defense. Dkt. 75 at 2-4. This Court should consider that consistency along with the other facts and circumstances in weighing the relevance of the defendant's proposed evidence to his earlier state of mind.

4

As defendant points out, there is a factual dispute about whether or not defendant first discussed amending his returns before or after he was interviewed by federal law enforcement and served with a subpoena seeking his tax records. Dkt. 75 at 3. Defendant's accountant previously testified under oath that the first conversation about amending the tax returns occurred after law enforcement visited the defendant. There is no dispute that the amended tax returns were not actually filed until April 2019, well after defendant was aware of the investigation and had retained criminal counsel.

If the defendant-accountant conversation occurred after defendant was aware of the law enforcement investigation, evidence of that conversation and the subsequent filing of the amended returns should be excluded, as courts have "repeatedly affirmed the exclusion of evidence of remedial action taken after the taxpayer knows he is under investigation." *Beavers*, 756 F.3d at 1050 (citing cases).

If the 2018 conversation occurred before defendant was aware of the criminal investigation, this Court should analyze the facts and circumstances of that conversation to determine whether or not that conversation is relevant to his earlier state of mind. The timing of the conversation does not make it relevant simply because it occurred before the defendant was aware of the criminal investigation.[2]

---

[2] There are a number of cases where the court deemed post-offense remedial actions to be irrelevant or minimally relevant without specifically relying on whether or not those actions occurred before or after defendant was aware he was under criminal investigation. *See, e.g., United States v. George*, 2008 WL 4949911 at *3-4 (N.D. Ca. Nov. 18, 2008), *aff'd* 411 Fed. Appx. 31, 34 (9th Cir. 2010) (evidence that defendant hired individuals in 1995 to assist with the filing of his 1993 tax return was "irrelevant" to the question of whether or not defendant had willfully failed to file a tax return when it was due in 1994); *United States v. Ross*, 626 F.2d 77, 81-82 (9th Cir. 1980) (evidence of defendant's tax filings after the charged tax years

5

As discussed below, defendant has not demonstrated the relevance of the proposed evidence, and must do so prior to the admission of the evidence.

## II. Defendant Has Not Demonstrated How the Proposed Testimony and Evidence is Relevant to his Earlier State of Mind

Much of the proposed testimony of defendant's accountants is directly relevant to defendant's knowledge and willfulness – for example, the interactions that defendant had with his accountants during the preparation of the charged tax returns are relevant to defendant's state of mind,[3] including testimony from defendant's accountants about whether or not they discussed mortgage interest deductions with defendant prior to the filing of those returns.[4]

Focusing on the conversation that purportedly took place in November or December 2018 – after the charged tax conduct – defendant asserts that his accountant will testify that this conversation was the first time that the accountant discussed mortgage interest deductions with defendant, and during this conversation, "he and [defendant] decided to file amended returns and pay the

---

"was not relevant to the charge that defendant had willfully failed to file tax returns" as charged); *United States v. Sawyer*, 607 F.2d 1190, 1193-94 (7th Cir. 1979) (affirming the trial court's exclusion of evidence that defendant paid his past-due taxes after the charged tax years).

[3] Defendant asserts that the government "has no direct evidence that Mr. Thompson ever read his tax returns . . . before signing them," conceding that such evidence would be relevant. Dkt. 75 at 6. However, defendant has objected on relevance and prejudice grounds to exhibits demonstrating that defendant received a copy of the prepared tax return and emailed his accountants questions about that return prior to filing. *See, e.g.*, GX 251, 255, 260-263. These objections should be overruled as these exhibits are admissible for the purpose defendant identified in his recent filing.

[4] The government's evidence includes evidence that defendant had written communications with his accountant about mortgage interest deductions relating to another financial institution during the preparation of the charged tax returns. *See, e.g.*, GX 37; GX 215 p. 1.

6

deficiency."[5] Dkt. 75 at 6. Several months later, defendant filed amended returns. While defendant claims the relevance of this testimony and evidence is "straightforward," he fails to explain how this evidence reflects his state of mind because it does not detail what he anticipates the accountant will say about defendant's words and actions during the purported 2018 conversation.

For example, in *United States v. Wade*, 203 Fed. Appx. 920, 929 (10th Cir. 2006), the district court excluded testimony from an accountant who intended to testify that the he attempted to settle the defendant's tax debt with the IRS after the charged tax crimes were completed.[6] The Tenth Circuit affirmed the exclusion of the evidence, explaining that defendant did not explain what "[the accountant] would have said or how that would have been relevant and admissible," and that the court further "fail[ed] to see how the attempts to settle the tax debt after the charged offenses are relevant to this conduct beforehand." *Id*.

The relevance of the 2018 conversation to defendant's earlier state of mind hinges on defendant's words and actions during this conversation. And this Court

---

[5] Defendant further intends to elicit lay opinion testimony from the accountant that the mortgage interest deduction was listed on the tax returns inadvertently. Dkt. 75 at 6. The government has moved to exclude this opinion testimony, as set forth in the Government's Response to Defendant's Motion *in Limine* Number 12 to Admit Lay Opinion Testimony, Dkt. 68.

[6] In the *Wade* case, defendant was charged in 2004 with conspiring to defraud the United States, filing false tax returns for tax years 1997-1999, evading the payment of tax liabilities from 1982-1984, and bankruptcy fraud related to a 2001 bankruptcy filing. *United States v. Wade,* 04-cr-00141 (D. Utah), Dkt. 1. The proposed testimony from the accountant related to a 2000 attempt to settle the defendant's debt with the IRS, which post-dated the charged tax conduct but predated the charged bankruptcy conduct and the 2004 indictment. *See United States v. Wade*, 05-4160 (10th Cir.), Appellee's Br., 2006 WL 2151377 at *21-22, 44-45 (May 25, 2006).

7

needs additional information to determine the relevance, including which party first brought up that the deductions were on the return; whose idea it was to amend the return (a fact that, while not dispositive, is nonetheless relevant); if the accountant asked defendant if defendant knew the mortgage interest was on the returns, and how defendant responded, if at all; and how this conversation related to the amended tax returns filed approximately four months later. Significantly, to be relevant, there must be something about defendant's words and actions that also reflect his earlier state of mind when he filed false tax returns. This Court needs to determine the threshold question of relevance.

Federal Rule of Evidence 104(a) states that the Court must "decide any preliminary question about whether . . . evidence is admissible." The Court further has the discretion to conduct a hearing on the issue outside the presence of the jury if "justice so requires." Fed. R. Evid. 104(c)(3). When determining the admissibility of evidence, a "trial court has broad discretion to assess the relevancy of proffered evidence." *United States v. Taylor*, 604 F.3d 1011, 1014 (7th Cir. 2010) (quotation omitted). Therefore, the Court is correct to ask defendant to further articulate how the 2018 conversation reflects defendant's earlier state of mind, including a hearing if necessary. Armed with that additional information, the Court can determine if the

purported 2018 conversation, and the subsequent amended returns, are relevant and admissible under Federal Rules of Evidence 401 and 403.[7]

Even if this Court determines the proposed testimony and evidence is admissible as relevant to defendant's earlier state of mind, the Court should explore outside the presence of the jury whether the proposed testimony and evidence will be elicited in a way that comports with the hearsay rules. The accountant's statements to defendant are hearsay, as are the statements that defendant made to the accountant. Defendant has identified no hearsay exception that allows defendant's self-serving out-of-court prior statements to be admitted through testimony of a third party, the accountant. As the *Beavers* court explained, "the general rule against hearsay, see Fed.R.Evid. 802, would typically prevent calling a friend to the stand to relay an exculpatory statement the defendant said to her, in lieu of the defendant testifying himself." 756 F.3d at 1051. The hearsay nature of the 2018 conversation also weighs in favor of a determination of the admissibility of the conversation outside the presence of the jury, as it would be improper for defendant to call the accountant and elicit the accountant's and defendant's hearsay statements in front of the jury

---

[7] If the Court rules that evidence of the 2018 conversation is admissible, along with the amended returns, the evidence should be admitted only as evidence of defendant's earlier intent when he filed the 2013-2017 tax returns. Other uses for the evidence would be impermissible and may confuse or mislead the jury under Federal Rule of Evidence 403. *See, e.g., United States v. Evdokimow*, 726 Fed. Appx. 889, 893-896 (3d Cir. 2018) (affirming exclusion of post-conviction amended tax returns after the district court found that evidence was "confusing" under Rule 403 and "created a risk of jury nullification that was 'potentially uncurable . . . by even a careful instruction as to render it admissible'" because defendant could argue he "pay[s] [his] taxes like anybody else"); *see also* Dkt. 40 at 39.

9

without a determination by this Court that an exception to the hearsay rules is applicable.

Finally, defendant asserts that "the government itself contends that evidence from the exact same time period (i.e. certain portions of the December 3 interview is relevant to Mr. Thompson's state of mind," thus somehow making the conversation with his accountant also relevant and admissible. Dkt. 75 at 5. This assertion misses the mark because the government has identified the specific statements it seeks to introduce from the December 2018 law enforcement interview, as well as both the relevance of testimony about those statements (defendant's false statements about making payments to Washington Federal reflect a consciousness of guilt) as well as a hearsay exception allowing admissibility of those statements (Federal Rule of Evidence 802(d)(2), a statement offered against an opposing party). *See* Dkt. 45 at 28-33; Dkt. 54 at 5.

## III. Conclusion

For the foregoing reasons, the United States respectfully requests that the Court follow the approach set forth in *Beavers* and make a pretrial determination of the relevance of the evidence of defendant's purported post-offense conversation with his accountant pursuant to Federal Rules of Evidence 401 and 403, as well as whether such statements are inadmissible hearsay.

                        Respectfully submitted,

                        JOHN R. LAUSCH, JR.
                        United States Attorney

By:   /s/ *Michelle Petersen*
       MICHELLE PETERSEN
       BRIAN P. NETOLS
       Assistant United States Attorneys
       219 S. Dearborn Street, 5th Floor
       Chicago, Illinois 60604
       (312) 886-7655

Dated: November 3, 2021