IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 21 CR 279 |
| v. ) | |
| ) | Hon. Franklin U. Valderrama |
| PATRICK THOMPSON, ) | |
| ) | |
| Defendant. ) | |

**MOTION FOR JUDGMENT OF ACQUITTAL OR, IN THE ALTERNATIVE,
CERTAIN JURY INSTRUCTIONS ON COUNT ONE AND COUNT TWO**

Defendant Patrick Thompson, by undersigned counsel, respectfully moves the Court to enter a judgment of acquittal on Count One and Count Two or, in the alternative, to instruct the jury that it cannot convict Mr. Thompson on Count One or Count Two if it merely finds that Mr. Thompson said he borrowed $110,000 and disputed the principal balance of $269,000.

**I. Motion for Judgment of Acquittal on Count One and Count Two**

In Count One and Count Two, the government charges Mr. Thompson with violating 18 U.S.C. § 1014, which prohibits "knowingly mak[ing] any false statement or report . . . for the purpose of influencing in any way the action of" various government agencies. 18 U.S.C. § 1014. In particular, in Count One, the government charges that during his February 23, 2018 call with Bill Murray of Planet Home Lending, Mr. Thompson "falsely stated that he only owed $100,000 or $110,000 to Washington Federal and that any higher amount was incorrect, when defendant then knew he had received $219,000 from Washington Federal." (Indictment, ECF 1 at p. 3.) In Count Two, the government charges that during his March 1, 2018 call with John Holly and Dan Newell, Mr. Thompson "falsely stated that he only owed $110,000 to Washington Federal, that any higher amount was incorrect, and that these funds were used for home improvement, when

1

defendant then knew he had received $219,000 from Washington Federal and the $110,000 was paid to a law firm as defendant's capital contribution." (*Id.* at p. 4.)

The uncontroverted evidence—including the recording of the February 23, 2018 call and the testimony of both Mr. Holly and Mr. Newell—shows both that Mr. Thompson did not make the charged statements and that the statements he did make were literally true. Accordingly, no rational jury could return a guilty verdict, and the Court must enter a judgment of acquittal.

A. Legal Standard

Under Rule 29(a), at the close of the government's evidence or all the evidence, "the court on the defendant's motion must enter a judgment of acquittal on any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). A "Rule 29 judgment of acquittal is a substantive determination that the prosecution has failed to carry its burden." *Smith v. Massachusetts*, 543 U.S. 462, 468 (2005). To prevail, a defendant "must show that no rational trier of fact could have found that the government proved the essential elements of the crime beyond a reasonable doubt." *United States v. Griffin*, 684 F.3d 691, 694 (7th Cir. 2012). "If the evidence would not allow a civil case to survive a motion for summary judgment or a directed verdict, then the case has no business being given to a jury in a criminal trial." *United States v. Garcia*, 919 F.3d 489, 491 (7th Cir. 2019).

B. Literally true statements cannot support a conviction under § 1014 even if misleading.

A conviction for false statements cannot be sustained where the alleged statements are literally true, even if misleading. *Bronston v. United States*, 409 U.S. 352, 362 (1973). Indeed, courts have consistently held that statutes criminalizing false statements cannot be extended to criminalize false implications. In *Bronston*, the defendant was charged for the following exchange:

> Q. Do you have any bank accounts in Swiss banks, Mr. Bronston?
> A. No, sir.

2

>    Q. Have you ever?
>    A. The company had an account there for about six months, in Zurich.
>    Q. Have you any nominees who have bank accounts in Swiss banks?
>    A. No, sir.
>    Q. Have you ever?
>    A. No, sir.

*Id.* at 354. The government contended that the defendant committed perjury because he failed to disclose that he had previously had personal Swiss bank accounts, instead answering non-responsively to the second question. The Court held that despite "an implication in the answer to the second question that there was never a personal bank account," the conviction could not be sustained because the statute did not "make it a criminal act for a witness to willfully state any material matter that *implies* any material matter that he does not believe to be true." *Id.* at 357–58.

In *Williams v. United States*, 458 U.S. 279 (1982), the Supreme Court extended the same principle to the statute at issue here, 18 U.S.C. § 1014. In *Williams*, the defendant was charged with violating 18 U.S.C. § 1014 by writing bad checks. The government argued that a person writing a check is generally understood to represent that he currently has funds on deposit sufficient to cover the face value of the check. *Id.* at 285. The Court rejected that argument because "a check is literally not a 'statement' at all," reasoning that "when interpreting a criminal statute that does not explicitly reach the conduct in question, we are reluctant to base an expansive reading on inferences drawn from subjective and variable 'understandings'." *Id.* at 286.

The courts of appeals, including the Seventh Circuit, have followed the Supreme Court's lead in *Bronston* and *Williams* to similarly limit the scope of other false statement statutes. In *United States v. Lozano*, 511 F.2d 1, 5 (7th Cir. 1975), a green card applicant stated in her application that her husband was a U.S. citizen. The government contended that the statement was false because the purported marriage was a sham arranged for purposes of the applicant's immigration status. The court vacated the false-statement convictions, noting the "reluctance . . .

3

to find a knowing false statement where the alleged assertion may be literally true, even if false by implication or omission, is consistent with [*Bronston*]." *Id.* at 5.

More recently, in *United States v. Kurlemann*, 736 F.3d 439, 448 (6th Cir. 2013), the Sixth Circuit expressly held that a conviction under 18 U.S.C. § 1014 requires a *literally false* statement and cannot rest on mere implied misrepresentations, material omissions, or half-truths. "Until Congress opts to extend § 1014 to material omissions, implied misrepresentations, or fraud—all ways of getting at deceptive 'half truths'—we must take the statute as we find it, and as the Supreme Court has construed it." *Id.* at 449; *see also United States v. Vesaas*, 586 F.2d 101, 104 (8th Cir. 1978) (reversing conviction where defendant was alleged to have falsely denied owning stock in joint tenancy with his deceased mother, reasoning that it was literally true because it is legally impossible to own property in joint tenancy with a deceased person); *United States v. Gahagan*, 881 F.2d 1380 (6th Cir. 1989) (defendant's failure to disclose ownership of Jaguar was not a false statement where defendant had previously transferred title to his girlfriend and, under relevant state law, "own[ing]" a car meant having it titled in one's name).

C. Count One does not charge a false statement sufficient to support a conviction.

The Indictment charges, in Count One, that on February 23, 2018, Mr. Thompson "falsely stated he only **owed** $100,000 or $110,000 to Washington Federal and that any higher amount was incorrect, when defendant then knew he had received $219,000 from Washington Federal." (Indictment at p. 3 (emphasis added).) The evidence on Count One consists of a recorded call Mr. Thompson had with Bill Murray, a customer service representative of Planet Home Lending, on February 23, 2018. On that call, Mr. Thompson stated, "I borrowed $100,000," which he later corrected to $110,000. (GX 188; GX 189 3:13, 7:8-10.) That statement is literally true. He did borrow $110,000 from Washington Federal in November 2011, and the government went to great

4

lengths to prove that fact in its case-in-chief. (*See, e.g.,* GX 89, 90–92.) Contrary to the allegations in the Indictment, Mr. Thompson did not state that he <u>only</u> borrowed $110,000 or that he did not borrow additional amounts. Equally importantly, his statement about <u>borrowing</u> $110,000 says nothing about how much he <u>owed</u>. Notably, "borrow" does not mean "owe." A person may borrow a sum of money yet owe more than he borrowed due to interest or owe less than he borrowed due to payments or forgiveness.

During the February 23, 2018 call, Mr. Thompson also disputed that the principal balance of the loan was $269,000. However, disputing a balance is not a "statement" that admits of truth or falsity. *See Williams*, 458 U.S. at 286 (a check is not a "statement"). Moreover, even if it were a "statement," it still cannot suffice to support the false statement charged in the Indictment. Count One charges that Mr. Thompson stated he did not owe "any higher amount" than $110,000. (Indictment at p. 3.) But disputing the balance of $269,000 comes nowhere close to falsely stating that no more than $110,000 was owed. Moreover, it is undisputed that Mr. Thompson only borrowed $219,000 from Washington Federal. (*See, e.g.*, Indictment at p. 3 ("he had received $219,000 from Washington Federal"); *id.* at p. 4 (same).) Thus, nothing Mr. Thompson said about not having borrowed $269,000 constitutes a false statement regarding how much he owed that is sufficient to support a conviction under 18 U.S.C. § 1014. *See Bronston*, 409 U.S. at 357–58; *Williams*, 458 U.S. at 286; *Kurlemann*, 736 F.3d at 449.

What the government actually seeks is not to convict Mr. Thompson based on a <u>false</u> statement but rather on the theory that his statements during the call had the misleading implication that he borrowed *no more than* $110,000. No such implication can actually be drawn, but even if it could, Section 1014 only criminalizes false statements, not material omissions or misleading implications. *See Bronston*, 409 U.S. at 357–58; *Williams*, 458 U.S. at 286; *Kurlemann*, 736 F.3d

5

at 449.

The government has failed to prove the charged false statement during the February 23, 2018 call, and therefore Mr. Thompson is entitled to an acquittal.

D. <u>Count Two does not charge a false statement sufficient to support a conviction.</u>

The Indictment further charges, in Count Two, that on March 1, 2018, Thompson "falsely stated that he only owed $110,000 to Washington Federal, that any higher amount was incorrect, and that these funds were for home improvement, when defendant then knew he had received $219,000 from Washington Federal and the $110,000 was paid to a law firm as defendant's capital contribution." (Indictment at p. 4.)

The charged statement, which is alleged to have occurred during Mr. Thompson's conversation with John Holly and Dan Newell on March 1, 2018, is reflected on the Communication Log, which states in relevant part:

> Also on the call Mr. Thompson spoke about his personal debt 110,000. John Gembara loaned him 110,000 for home improvement, which was to be rolled up into his home loan (Bank was to do a term loan). Bank funded the loan with cashiers checks. He is disputing his balance and is sending us the documentation for this also. When John Holly told Thompson we could document these loans such as to put the appropriate mortgages in place, etc., Thompson express willingness to effect such.

(GX 191 at 2.)

As with Count One, the charged statement in Count Two that Mr. Thompson obtained a loan in the amount of $110,000 is literally true—a fact which John Holly admitted. (Rough Tr. 2/10/22 p.m. at 45.) Mr. Thompson said nothing about what amount he owed, nor did he say that he only borrowed $110,000 or that "any higher amount was incorrect." In fact, when squarely asked about the precise false statement charged in the Indictment, Holly expressly disavowed that it occurred:

6

> Q. Mr. Thompson never told you 'I only borrowed 110,000 – I only owe $110,000 and not other amount, correct? He never told you that?
>
> A. I don't recall him saying that.

(Rough Tr. 2/10/22 p.m. at 62.) Newell likewise testified that the charged false statement did not occur. (*Id.* at 96.)

Nor is the charged false statement—that Mr. Thompson owed only $110,000 and no higher amount—reflected anywhere in the Communications Log. (GX 191.) In fact, the Communications Log reflects no conversation whatsoever on March 1, 2018 regarding any particular loan balance, total amount borrowed, or total amount owed. Both Holly and Newell testified that the Communications Log is the "best evidence" of what occurred during the call. (Rough Tr. 2/10/22 p.m. at 41, 97-98.) Despite it not being reflected in the Communications Log, Holly did testify that he mentioned to Mr. Thompson on the call that the balance of the loan was $269,000. (*Id.* at 44.) But even then, Holly admitted that he does not "think he [Mr. Thompson] realized it was that much." (*Id.*) That testimony and the uncertainty Mr. Thompson had regarding the loan balance cannot support a conviction for a false statement, let alone the false statement that was charged. To the contrary, the testimony that Mr. Thompson did not realize it was that much requires his acquittal because it directly refutes the necessary intent.

Finally, the undisputed evidence defeats the claim that Mr. Thompson lied about the purpose of the $110,000 loan being for "home improvements" on the March 1, 2018 call. In an April 2, 2018 email, Newell wrote that Mr. Thompson "confirmed" that the $110,000 was his "buy in to the firm." (GX 199.) Both Holly and Newell testified that the **only** time the purpose of the $110,000 loan was discussed before April 2, 2018 was during the March 1, 2018 call. (Rough Tr. 2/10/22 p.m. at 52, 104; GX 191.) Thus, the undisputed evidence shows that Mr. Thompson told the truth about the purpose of the loan on the March 1, 2018 call.

The undisputed evidence shows that the false statement charged in Count Two did not occur, and therefore Mr. Thompson is entitled to an acquittal.

**II. Motion, in the Alternative, for Certain Jury Instructions**

In the event the Court declines to enter a judgment of acquittal, it should make clear to the jury that it cannot convict Mr. Thompson if it finds that he merely said he "borrowed" $110,000 or that he disputed the $269,000 balance. The jury should be instructed that they can convict only if they find, among the other elements, that Mr. Thompson said, in substance, that he **only owed** $110,000 and that any higher amount was incorrect, as alleged in the Indictment. Instructing the jury otherwise—for example, that it could find Mr. Thompson guilty if it finds he merely said he borrowed $110,000—would permit a conviction based on a literally true statement in contravention of *Bronston* and *Williams*.

Moreover, permitting the jury to convict based on Mr. Thompson's statement that he "borrowed" $110,000 or that he disputed the $269,000 balance would violate Mr. Thompson's Fifth Amendment rights by constructively amending the Indictment, broadening the possible bases for conviction beyond those presented by the grand jury. *See United States v. Willoughby*, 27 F.3d 263, 266 (7th Cir. 1994) (constructive amendment is reversible *per se*). Here, the divergence between the Indictment and the evidence would constitute a reversible, constructive amendment, and not merely a variance, because the Indictment alleges an actionable false statement (*i.e.*, Mr. Thompson said he "only owed" $110,000 and "that any higher amount is incorrect") whereas the evidence shows only a literally true statement (*i.e.*, Mr. Thompson said he "borrowed" $110,000 and disputed the $269,000 balance), which cannot sustain a conviction. *See id.*; *Bronston,* 409 U.S. at 357–58.

WHEREFORE Defendant Patrick Thompson respectfully requests that this Court enter a

judgment of acquittal on Count One and Count Two or, in the alternative, instruct the jury that it cannot convict on Count One and Count Two unless it finds, among the other elements, that Mr. Thompson said that he only owed $110,000 and that any higher amount was incorrect.

Dated: February 10, 2022                        Respectfully submitted,

                                                         /s/ Chris Gair
                                         Chris Gair (cgair@gairlawgroup.com)
                                         Jeff Eberhard (jeberhard@gairlawgroup.com)
                                         Carly Chocron (cchocron@gairlawgroup.com)
                                         Gair Eberhard Nelson Dedinas, Ltd.
                                         1 East Wacker Drive, Suite 2600
                                         Chicago, Illinois 60601
                                         (312) 600-4900

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on February 10, 2022, he caused a copy of the foregoing document to be filed via this Court's CM/ECF system which will provide service on all Parties of record.

/s/ Chris Gair
Chris Gair